UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALEXIS ROBINSON,

      Plaintiff,

  -against-

SYOSSET CENTRAL SCHOOL DISTRICT,
ADELE BOVARD, THEA PALLOS, and
MELANIE SPIEGEL,

      Defendants.

**VERIFIED COMPLAINT**

Case No.: 1:21-cv-02537

Hon.: _____

Plaintiff Alexis Robinson ("Ms. Robinson"), by and through her attorneys, the Law Offices of G. Oliver Koppell & Associates, complains of the above-named defendants, and alleges as follows:

**NATURE OF THE ACTION**

1.  This is a civil action brought by Ms. Robinson to remedy the willful discrimination based on race, retaliation, and the subjection to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII") and N.Y. Exec. Law § 296, *et seq.* ("New York State Human Rights Law"), in connection with her former employment as a second-grade teacher at the Robbins Lane School ("Robbins Lane.")

2.  Ms. Robinson was, while under extreme duress, compelled to resign from her position as a second-grade teacher with the Syosset Central School District on or about April 6, 2020 by Robbins Lane Principal Thea Pallos ("Ms. Pallos") and Syosset Central School District Assistant Superintendent Adele Bovard ("Ms. Bovard") following months of racially motivated harassment and abuse directed towards her by Ms. Pallos, Ms. Bovard, and Melanie Spiegel ("Ms. Spiegel").

1

3.      Ms. Robinson seeks compensatory damages, attorneys' fees, costs, and such other legal and equitable relief against all defendants as this Court deems appropriate.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Ms. Robinson's Title VII claims pursuant to 42 U.S.C. 2000e-5(f) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Ms. Robinson's state law claims pursuant to 28 U.S.C. § 1367.

5.      Ms. Robinson filed a timely charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or around October 11, 2020. By letter dated February 18, 2021, the EEOC provided Ms. Robinson with a Notice of Right to Sue.  A copy of such letter is attached as "Exhibit A."

6.      Ms. Robinson timely filed a Notice of Claim pursuant to General Municipal Law § 50-e by mailing such notice to the Syosset Central School District on October 8, 2020. On or about October 16, 2020, counsel for the Syosset Central School District, Sokoloff Stern LLP, provided Ms. Robinson with a Demand for a Statutory Hearing. A copy of such letter is attached as "Exhibit B." Ms. Robinson participated in a remote 50-H hearing on or about December 17, 2020.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because one of the defendants resides and regularly does business in this district, all defendants reside in the State of New York, and because a substantial part of the acts and omissions giving rise to this action occurred in this district.

## PARTIES

8.      Ms. Robinson is an African American female who is currently residing in Nassau County in the State of New York. She received a Bachelor of Science in Psychology from

Davidson College in or around May 2014. She received a master's degree in General and Special Education, with a concentration in Grades 1-6, from Touro College in or around January 2018 where she maintained a 3.9 grade point average.

9.      The Syosset Central School District ("SCSD") is a municipal corporation duly incorporated and existing under the laws of the State of New York located in Nassau County. The Syosset Central School District owns and operates Robbins Lane, where Ms. Robinson worked as a teacher.

10.     Ms. Pallos is a white female who, upon information and belief, resides in Queens County in the State of New York. She is the Principal of Robbins Lane and was Ms. Robinson's direct supervisor. At all times relevant herein, Ms. Pallos was and is an agent, servant, and/or employee of the SCSD.

11.     Ms. Bovard is a white female who, upon information and belief, resides in Nassau County in the State of New York. She was the Assistant Superintendent of the SCSD. At all times relevant herein, Ms. Bovard was an agent, servant, and/or employee of the SCSD.

12.     Ms. Spiegel is a white female who, upon information and belief, resides in Nassau County in the State of New York. She is a teacher at Robbins Lane and was Ms. Robinson's mentor. At all times relevant herein, Ms. Spiegel was and is an agent, servant, and/or employee of the SCSD.

## FACTUAL ALLEGATIONS

13.     Ms. Robinson was hired by the SCSD in or around August of 2018 to the position of Tutor. In that capacity, she was primarily a classroom support specialist for struggling students assigned to the second-grade class of Traci Lichtenstein ("Ms. Lichtenstein"), who is white, and the fourth-grade class of Marcelle Demarco ("Ms. Demarco"), who is also white.

14.     Ms. Robinson spent the 2018-2019 school year primarily observing and assisting Ms. Lichtenstein and Ms. Demarco in their respective classrooms. She also provided small group instruction and interventions for individual students at Robbins Lane.

15.     Throughout the 2018-2019 school year, Ms. Lichtenstein was a first year second-grade teacher who had been employed as a Tutor for the previous year.

16.     Throughout her observations of Ms. Lichtenstein, Ms. Robinson witnessed Ms. Lichtenstein call out of work numerous times and show up to work unprepared for daily lessons/instructions. Nevertheless, at the conclusion of the 2018-2019 school year, Ms. Lichtenstein was asked to return for her second year as a probationary classroom teacher for the SCSD. This would foreshadow the disparate racial treatment Ms. Robinson, who was an exemplary employee, would eventually be subjected to.

17.     Notably, Ms. Spiegel also mentored Ms. Lichtenstein.

18.     In or around August 28, 2019, Ms. Robinson accepted a position as a second-grade teacher at SCSD. She was assigned to Robbins Lane. Upon information and belief, upon accepting the position, Ms. Robinson became the first African American classroom teacher at Robbins Lane in approximately 19 years.

19.     Ms. Robinson had early success in her new role as a second-grade teacher. On or about October 7, 2019, Ms. Pallos participated in an informal observation of Ms. Robinson during classroom exercises. In connection with such observation, Ms. Pallos submitted an evaluation report on or about October 8, 2019 which listed Ms. Robinson's overall rating as "effective."

20.     On or about November 4, 2019, Ms. Pallos participated in a coaching observation of Ms. Robinson's classroom. In connection with such observation, Ms. Pallos submitted an evaluation report on that same day which listed Ms. Robinson's overall rating as "effective."

21.     On or about December 10, 2019, Ms. Pallos participated in a coaching observation of Ms. Robinson's classroom. In connection with such observation, Ms. Pallos submitted an evaluation report on or about December 11, 2019 which listed Ms. Robinson's overall rating as "effective."

22.     On or about December 12, 2019, Ms. Pallos participated in a formal observation of Ms. Robinson in a collaborative lesson with a fifth-grade class as well as the enrichment teacher at Robbins Lane. In connection with such observation, Ms. Pallos submitted an evaluation report on or about December 16, 2019 which listed Ms. Robinson's overall rating as "highly effective."

23.     On or about January 8, 2020, Ms. Pallos stopped by Ms. Robinson's classroom to inform her that the Science Coordinator for the SCSD was looking to showcase examples of scientific work conducted by students within the district. Ms. Pallos asked Ms. Robinson if she would be willing to represent Robbins Lane, as well as the entire second-grade team, at a Board of Education meeting where she would present her students' scientific work. Ms. Robinson accepted such opportunity.

24.     On that same day, Ms. Pallos also participated in a coaching observation of Ms. Robinson's classroom. However, Ms. Pallos did not submit an evaluation report in connection with such observation until February 26, 2020, after the harassment of Ms. Robinson had commenced, and only after Ms. Robinson formally requested such evaluation report. Such evaluation report was completely blank, except to note that the overall assessment of Ms.

Robinson's performance was rated as "developing." Ms. Robinson was also never given the opportunity to discuss this rating in a post-observation meeting, which she was entitled to pursuant to the employment policies of the SCSD.

25.    On or about January 14, 2020, Ms. Robinson participated in a meeting with Ms. Pallos, the entire second-grade team, and the SCSD Science Coordinator, whereby said parties discussed what would be presented to the Board of Education. The parties collectively decided to present on a non-Newtonian fluid lesson series that Ms. Robinson's classroom had collaborated on with a fifth-grade class. Ms. Robinson was also chosen to be the official spokesperson for the second-grade team at the aforementioned Board of Education meeting.

26.    From at or around January 14, 2020 through March 2020, the second-grade team met numerous times to prepare for and practice for the aforementioned Board of Education presentation. Ms. Robinson was selected as the sole teacher representative and was asked to prepare introductory and closing remarks for the presentation along with the second-grade team.

27.    On or about February 3, 2020, Ms. Robinson was summoned to Ms. Pallos' office in the middle of the day for what she was told was a "standard mid-year check in" ("February 3rd Meeting"). However, Ms. Robinson was blindsided and quickly learned that such meeting was, in reality, a disciplinary meeting. Throughout such meeting, Ms. Robinson was subjected to unsubstantiated criticism that directly contradicted all the previous evaluations of her up until that time. Ms. Robinson was also not informed of or given the right to have union representation present with her at such meeting, as is required by SCSD employment policies.

28.    On or about February 5, 2020, Ms. Robinson received a letter ("February 5th Letter") from Ms. Pallos memorializing what was discussed during the February 3rd Meeting. Said letter contained numerous patently false claims regarding Ms. Robinson's performance at

6

work including, but not limited to, that Ms. Robinson, "did not open library books in a timely manner to utilize them in the fall term" and that Ms. Robinson was "unprepared" for a data meeting.

29.     The February 5th Letter also patently misrepresented what Ms. Robinson and Ms. Pallos discussed at the February 3rd Meeting. Among other such misrepresentations, the letter quotes Ms. Robinson as stating that she struggled with time management and planning, yet Ms. Robinson made no such admissions during such the February 3rd Meeting.

30.     The February 5th Letter also asked Ms. Robinson to create an "action plan" whereby she would set forth her goals for the rest of the year.

31.     The February 5th letter also contained a notation that a copy of such letter would be placed in Robinson's employee file.

32.     On or about February 11, 2020, Ms. Robinson met with Ms. Pallos and Ms. Spiegel to discuss her action plan ("February 11th Meeting"). Importantly, Ms. Robinson was not informed of her right to have union representation present at such February 11th Meeting, nor was she given an opportunity to do anything to ensure she had union representation at such February 11th Meeting.

33.     Also noteworthy is that Ms. Robinson's action plan called for her to leave the door to her classroom open at all times. Ms. Robinson would later come to learn from a union member, that such requirement created a fire hazard and was expressly illegal pursuant to the fire code. Such requirement also allowed for excess noise to come into the classroom, which made teaching difficult for her.

34.     Beginning at or around the week of February 10, 2020, through the week of March 13, 2020, Ms. Pallos began to harass Ms. Robinson relentlessly. Ms. Pallos vastly

increased the number of "drive-by's" (a term coined by Ms. Pallos herself to refer to unplanned observations) of Ms. Robinson's classroom in an apparent attempt to intimidate Ms. Robinson and make her feel uncomfortable. Ms. Pallos also constantly sent demeaning emails to Ms. Robinson and even had her secretary hand deliver letters to Ms. Robinson, while Ms. Robinson was teaching. Such actions disrupted Ms. Robinson's ability to teach.

35.     Ms. Pallos also began to place additional standards and requirements upon Ms. Robinson that differed from the standards and requirements imposed upon other teachers in the same grade level and school wide.

36.     Upon information and belief, Ms. Pallos also instructed Ms. Spiegel to harass and intimidate Ms. Robinson. Beginning at or around the week of February 10, 2020, through the week of March 13, 2020, Ms. Spiegel facilitated the discrimination and harassment of Ms. Robinson by Ms. Pallos. Ms. Spiegel degraded Ms. Robinson's work performance, disregarded her complaints about disparate treatment and feeling unwelcomed in the school community, and worked alongside Ms. Pallos to impose different standards upon her than other similarly situated teachers. Ms. Spiegel also made misrepresentations to Ms. Pallos regarding Ms. Robinson's performance at work.

37.     Ms. Robinson began to realize that Ms. Spiegel treated Ms. Robinson very differently than she had treated Ms. Lichenstein, who is white. Upon information and belief, such disparate treatment was due to racial animus on the part of Ms. Spiegel.

38.     On or about February 27, 2020, Ms. Robinson received an email from Ms. Pallos that her previous formal observation would have to be changed to a less significant "coaching" observation. Ms. Robinson was also informed that she would have to schedule a final formal observation. However, Ms. Robinson was never provided the opportunity to have such final

formal observation. Importantly, it must be noted that Ms. Robinson scored very highly on such observation. Upon information and belief, such observation was changed to lessen the positive impact of Ms. Robinson's strong performance. Upon information and belief, Ms. Pallos changed such observation from a formal observation to a coaching observation due to racial animus.

39.     On or about February 27, 2020, Ms. Robinson was informed by her fellow second-grade teachers that Ms. Pallos had told them that Ms. Robinson should not be allowed to present the aforementioned Board of Education presentation by herself.  It was also decided by said teachers that another second-grade teacher would now be taking over the vast majority of the presenting at such Board of Education meeting and that Ms. Robinson would only be permitted to read the last three sentences of the closing remarks. Ms. Pallos never discussed these changes with Ms. Robinson personally. It is also important to note that, in reference to such Board of Education presentation, the student representative selected to represent the second grade was one of Ms. Robinson's students, who was selected following auditions of students.

40.     On or about March 9, 2020, Ms. Robinson received a letter from Ms. Pallos ("March 9th Letter") that levied multiple patently false accusations against her.

41.     Such patently false accusations present in said March 9th Letter include, but are not limited to:

a)  That Ms. Robinson had not developed bulletin boards for social studies, science, and mathematics with clearly delineated labels, but rather had asked a Teacher's Assistant to do it. In reality, Ms. Robinson had created such bulletin boards and developed the content present on such bulletin boards and had only asked a Teacher's Assistant to label them with their respective subject titles.

9

b) That Ms. Robinson's students should have had access to "vowel charts" since at or around September 2019 and that Ms. Robinson had neglected to make such vowel charts accessible to such students since that time. In reality, Ms. Robinson's students did indeed have access to such vowel charts from September 2019 onward and had used them in class.

c) That the "Heinemann Library" was not labeled. In reality, Ms. Robinson's classroom featured all of the Heinemann resources and that all such resources were clearly delineated by subject.

d) That the "word wall" was not being used. When, in reality, Ms. Robinson had instructed her students that, if they were to come across a word that they did not know how to spell while writing, they could attempt to spell such word on various strips of paper and compare such spellings to the spellings of various words on the word wall.

42. Upon information and belief, Ms. Pallos made such patently false accusations to establish a pretextual explanation for the future termination of Ms. Robinson so as to avoid liability for racial discrimination.

43. The March 9th letter contained a notation that a copy of such letter would be placed in Ms. Robinson's employee file.

44. On or about March 10, 2020, Ms. Robinson, met with Angela Alfred ("Ms. Alfred"), the school building union representative, to discuss the discriminatory treatment of Ms. Pallos and Ms. Spiegel as well as the disparate treatment she was experiencing at the hands of Ms. Pallos and Ms. Spiegel. Ms. Alfred informed Ms. Robinson that Ms. Robinson should have

been informed that she was entitled to union representation and that no letters should have been placed in Ms. Robinson's employee file without her signature indicating her consent.

45.     At no point prior to March 10, 2020, was Ms. Robinson offered the opportunity to have union representation, nor was she asked to sign either the February 5th Letter or the March 9th Letter.

46.     On or about March 12, 2020, Ms. Alfred spoke with Ms. Robinson and informed her that she had discussed what Ms. Robinson had previously told her with Ms. Pallos and that Ms. Pallos had remarked that she did not remember putting anything in Ms. Robinson's employee file. Ms. Alfred told Ms. Robinson that Ms. Pallos was "toying" with Ms. Robinson in an attempt to intimidate her.

47.     Upon information and belief, Ms. Pallos was "toying" with Ms. Robinson and attempting to intimidate her because Ms. Robinson is African American.

48.     Ms. Alfred also commented to Ms. Robinson in or around March or April of 2020 that anytime there had ever been an issue or some kind of disciplinary meeting with a teacher, Ms. Pallos had always previously informed Ms. Alfred. Ms. Alfred said Ms. Robinson was the first time, in her experience, that Ms. Pallos did not inform Ms. Alfred about a disciplinary meeting with a teacher. Ms. Alfred remarked to Ms. Robinson that she had never previously witnessed a teacher being targeted by Ms. Pallos to the same degree as Ms. Robinson.

49.     Upon information and belief, Ms. Pallos treated Ms. Robinson differently than other teachers because Ms. Robinson is African American.

50.     Ms. Alfred also commented to Ms. Robinson in or around March or April of 2020 that if she (Ms. Alfred) was being subjected to the same disparate treatment as Ms. Robinson, she (Ms. Alfred) "would not have been able to last in school."

51.     On or about the morning of March 13, 2020, Ms. Robinson received a letter from Ms. Bovard requesting that Ms. Robinson report to Ms. Bovard's office later that afternoon.

52.     Upon reporting to Ms. Bovard's office, Ms. Robinson was informed that her probationary period would end at the end of the school year and that she should resign. If she refused to resign, she was informed she would be terminated.

53.     Upon information and belief, Ms. Robinson was terminated in retaliation for contacting Ms. Alfred to complain about the harassment and disparate treatment she was being subjected to by Ms. Pallos and Ms. Spiegel.

54.     On or about March 24, 2020, Ms. Robinson sent an email to Ms. Bovard asking to be provided with the reasons for her termination.

55.     On or about March 26, 2020, Ms. Robinson received a response from Ms. Bovard ("March 26th Email") that listed entirely pretextual and patently false factual determinations that supposedly lead to the decision to terminate Ms. Robinson.

56.     On or about April 6, 2020, Ms. Robinson submitted her letter of resignation to Ms. Bovard. Said letter noted that Ms. Robinson was submitting her letter of resignation "under extreme duress" and that she was "compelled" to submit such letter. Said letter also noted that, "The reason behind my resignation is that my recent experiences in the workplace have become progressively adverse as a result of actions taken by the principal and other staff."

57.     On or about April 14, 2020, Ms. Robinson replied to Ms. Bovard's March 26th Email rebutting the entirely pretextual accusations made in such email.

58.     On or about April 16, 2020, Ms. Robinson engaged in a telephone conversation with Union President Michael Callahan ("Mr. Callahan") who identified that he was calling on behalf of Ms. Bovard. During such conservation, Mr. Callahan informed Ms. Robinson that Ms.

Bovard had refused to accept Ms. Robinson's aforementioned letter of resignation. Mr. Callahan asked Ms. Robinson to submit a new "vanilla" resignation letter. Mr. Callahan informed Ms. Robinson that she had until the end of the day to submit a new resignation letter or the Board of Education would move to terminate her.

59.     Mr. Callahan also noted to Ms. Robinson that Ms. Bovard's attitude with regard to Ms. Robinson was "how dare" Ms. Robinson submit such a resignation.

60.     Upon information and belief, Ms. Bovard's attitude with regard to Ms. Robinson's factually correct resignation letter arose out of race-based animus. Upon information and belief, Ms. Bovard, among other school administrators, was perturbed by the thought of an African American teacher asserting herself and standing up for herself against the SCSD, a majority white organization. This notion is also reflected in Ms. Robinson's aforementioned retaliatory termination.

61.     Ms. Robinson declined to submit to the expressly discriminatory, unethical, and unprofessional requests of Ms. Bovard and the SCSD to revise her termination letter and decided to take no action to amend it.

62.     On or about April 21, 2020, Ms. Robinson sent an email to Dr. Thomas Rogers ("Dr. Rogers"), Superintendent of the SCSD informing him of the aforementioned bullying, harassment, and disparate treatment she experienced at the hands of Ms. Pallos and Ms. Bovard ("April 21st Email").

63.     In response, to said April 21st Email, Dr. Rogers noted, among other things, that despite Ms. Robinson's refusal to amend her previously deemed "unacceptable" letter of resignation, the SCSD would be accepting such resignation and would not move to terminate her.

13

64.     On or about April 23, 2020, Ms. Robinson received an email from Rosemarie Davidson, Secretary to Dr. Rogers, asking her to engage in a discussion with SCSD attorney Christopher Powers, Esq. ("Mr. Powers"), of Ingerman Smith, LLP, on April 24, 2020.

65.     On or about April 23, 2020, Ms. Robinson also received an email from Dr. Rogers informing her that her participation in such aforementioned discussion with Mr. Powers was "obligatory."

66.     On or about April 24, 2020, Ms. Robinson participated in an hour-long phone conservation with Mr. Powers whereby Mr. Powers asked Ms. Robinson questions on behalf of the SCSD.

67.     On or about June 3, 2020, Ms. Robinson received an email from Dr. Rogers indicating that Board of Education had accepted her aforementioned letter of resignation at the April 28, 2020 board meeting.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR UNLAWFUL RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII AND THE NEW YORK STATE HUMAN RIGHTS LAW

68.     Ms. Robinson re-alleges and incorporates all the facts and allegations expressed above as if more fully alleged and incorporated herein.

69.     Ms. Bovard's, Ms. Pallos', and Ms. Spiegel's aforementioned comments and behavior, including harassing Ms. Robinson, criticizing her, levying false claims against her related to her performance, subjecting her to meritless disciplinary proceedings, bullying her, intimidating her, subjecting her to different standards than other similarly situated teachers, and making her job unnecessarily more difficult were made and done on the basis of her race.

14

70.     Ms. Bovard, Ms. Pallos, and Ms. Spiegel did not criticize, harass, intimidate, or bully Ms. Robinson's white colleagues in the same manner that they did towards Ms. Robinson.

71.     The decision to ask Ms. Robinson to resign was made and done on the basis of her race.

72.     The decision of Ms. Pallos to subject Ms. Robinson to meritless disciplinary meetings was made and done on the basis of her race.

73.     The decision of Ms. Pallos to subject Ms. Robinson to an increasing number of "drive-bys" was made and done on the basis of her race.

74.     The decision of Ms. Pallos to intimidate Ms. Robinson was made and done on the basis of race.

75.     The decision of Ms. Bovard to originally reject Ms. Robinson's honest and truthful letter of resignation and threaten Ms. Robinson with formal termination if she refused to amend it was made and done on the basis of her race.

76.     The decision of Ms. Bovard to present patently false factual determinations as the reasons for Ms. Robinson's termination was made and done on the basis of her race.

77.     The decision of Ms. Spiegel to treat Ms. Robinson differently than Ms. Lichenstein, who was both white and an objectively less competent teacher, was made and done on the basis of her race.

78.     The decision of Ms. Spiegel to misrepresent the performance of Ms. Robinson to superiors was made and done on the basis of her race.

79.     Any reason advanced by the SCSD, or the other defendants, for the treatment of Ms. Robinson is a pretext for discrimination. Ms. Robinson's membership in a protected class was the reason for this disparate treatment, harassment, and discrimination.

80.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves, constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

81.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves constitute unlawful discrimination in violation of New York State Executive Law § 296 (New York State Human Rights Law).

82.     Ms. Bovard, Ms. Pallos, and Ms. Spiegel are each, individually, an "Aider and Abettor" as that term is defined by the New York State Human Rights Law, because they actually participated in the conduct giving rise to the claim for unlawful racial discrimination.

83.     By reason of the foregoing, Ms. Robinson has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND THE NEW YORK STATE HUMAN RIGHTS LAW

84.     Ms. Robinson re-alleges and incorporates all the facts and allegations expressed above as if more fully alleged and incorporated herein.

85.     Ms. Bovard's, Ms. Pallos', and Ms. Spiegel's aforementioned comments and behavior, including harassing Ms. Robinson, criticizing her, levying false claims against her related to her performance, subjecting her to meritless disciplinary proceedings, bullying her, intimidating her, subjecting her to different standards than other similarly situated teachers, and making her job unnecessarily more difficult, created an intimidating working environment that was discriminatory and altered the conditions of Ms. Robinson's employment at the SCSD.

86.     Ms. Bovard's, Ms. Pallos', and Ms. Spiegel's aforementioned comments and behavior, including harassing Ms. Robinson, criticizing her, levying false claims against her related to her performance, subjecting her to meritless disciplinary proceedings, bullying her, intimidating her, subjecting her to different standards than other similarly situated teachers, and making her job unnecessarily more difficult created a workplace that included physical intimidation and discriminatory intimidation for Ms. Robinson.

87.     Ms. Bovard's, Ms. Pallos', and Ms. Spiegel's aforementioned comments and behavior, including harassing Ms. Robinson, criticizing her, levying false claims against her related to her performance, subjecting her to meritless disciplinary proceedings, bullying her, intimidating her, subjecting her to different standards than other similarly situated teachers, and making her job unnecessarily more difficult created a workplace environment filled with discriminatory conduct and humiliation that reasonable people would find discriminatory and hostile.

88.     The aforementioned intimidation, harassment, and false claims levied at Ms. Robinson created a workplace filled with ridicule and insult.

89.     Ms. Bovard's, Ms. Pallos', and Ms. Spiegel's demeaning attitude toward Ms. Robinson created an abusive work environment filled with discriminatory conduct.

90.     Ms. Pallos' decision to subject Ms. Robinson to frequent "drive-by's", to force her to keep her classroom door open in direct contradiction to the fire code, and to intimidate Ms. Robinson unreasonably interfered with Ms. Robinson's work performance.

91.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves constitute a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

17

92.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves constitute a hostile work environment in violation of New York State Executive Law § 296 (New York State Human Rights Law).

93.     Ms. Bovard, Ms. Pallos, and Ms. Spiegel are each, individually, an "Aider and Abettor" as that term is defined by the New York State Human Rights Law because they actually participated in the conduct giving rise to the claim for hostile work environment.

94.     By reason of the foregoing, Ms. Robinson has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR RETALIATION IN VIOLATION OF TITLE VII AND THE NEW YORK STATE HUMAN RIGHTS LAW

95.     Ms. Robinson re-alleges and incorporates all the facts and allegations expressed above as if more fully alleged and incorporated herein.

96.     The markedly negative treatment Ms. Robinson was exposed to following her February 3rd Meeting created a fear of adverse action while performing a protected work activity.

97.     The decision to formally request that Ms. Robinson submit a letter of resignation after she engaged in the protected work activity of complaining about perceived disparate treatment based on race to union representative Angela Alfred constitutes an adverse employment action.

98.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves, constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

99.     The foregoing acts of agents, servants, and or employees of the above Defendants and/or the above Defendants themselves, constitute retaliation in violation of the New York State Executive Law § 290 (New York State Human Rights Law).

100.    Ms. Bovard, Ms. Pallos, and Ms. Spiegel are each, individually, an "Aider and Abettor" as that term is defined by the New York State Human Rights Law because they actually participated in the conduct giving rise to the claim for retaliation.

101.    By reason of the foregoing, Ms. Robinson has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## **JURY DEMAND**

102.    Ms. Robinson demands a trial by jury on all issues.

**WHEREFORE** Ms. Robinson respectfully requests the court to grant the following relief:

1.     On the First Cause of Action, directing the Defendants to pay Ms. Robinson compensatory and punitive damages in the amount of one-million dollars ($1,000,000.00);

2.     On the Second Cause of Action, directing the Defendants to pay Ms. Robinson compensatory and punitive damages in the amount of one-million dollars ($1,000,000.00);

3.     On the Third Cause of Action, directing the Defendants to pay Ms. Robinson compensatory and punitive damages in the amount of one-million dollars ($1,000,000.00);

4.     Awarding Ms. Robinson reasonable attorney's fees and costs; and

5.      Granting such other and further relief as this Court deems necessary and proper.

Dated:  New York, New York
        May 6, 2021

                                        **LAW OFFICES OF G. OLIVER**
                                        **KOPPELL & ASSOCIATES**


                                        By:  _____*/S/ G. Oliver Koppell*_____
                                              G. Oliver Koppell
                                              *Counsel for Plaintiff*
                                              99 Park Avenue, Suite 1100
                                              New York, New York 10016
                                              Telephone: (212) 867-3838
                                              Facsimile:  (212) 681-0810

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS ROBINSON, | |
| Plaintiff, | |
| -against- | **ATTORNEY VERIFICATION** |
| SYOSSET CENTRAL SCHOOL DISTRICT, ADELE BOVARD, THEA PALLOS, and MELANIE SPIEGEL, | Case No.: 1:21-cv-02537 |
| Defendants. | Hon.: _____ |

G. Oliver Koppell, Esq., an attorney duly admitted to practice law in the United States

District Court for the Eastern District of New York, hereby affirms the following:

1.  I am counsel for the Plaintiff, Alexis Robinson, in the within action.

2.  I have read the foregoing Summons and Complaint and know the contents thereof and the

     same is true to my knowledge, except as to the matters therein stated to be alleged upon

     information and belief and that as to those matters, I believe them to be true.

3.  The grounds of my belief as to all matters not stated upon my own knowledge are the

     facts as stated to me and my office staff by Plaintiff.

4.  The reason I am making this verification instead of Plaintiff is that Plaintiff resides

     outside the County of New York where I maintain my offices.

Dated: New York, New York
         May 6, 2021

                                                        **LAW OFFICES OF G. OLIVER**
                                                        **KOPPELL & ASSOCIATES**

                                                        _____*/S/ G. Oliver Koppell*_____
                                                        G. Oliver Koppell, Esq.

21